IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN LEWIS, on behalf of himself and those similarly situated, | ) ) ) Case No. 1:19-cv-178 |
| Plaintiff, | ) ) Judge Michael R. Barrett ) |
| vs. | ) Magistrate Judge Stephanie K. Bowman ) ) |
| SENTRY ELECTRICAL GROUP, INC., | ) **JOINT MOTION FOR APPROVAL OF** ) **COLLECTIVE ACTION SETTLEMENT** |
| Defendant. | ) ) |

## INTRODUCTION

Named Plaintiff, John Lewis, and Defendant, Sentry Electrical Group, Inc., respectfully move this Court for an Order approving the Fair Labor Standards Act ("FLSA") settlement reached by the Parties and memorialized in the Collective Action Settlement Agreement ("Settlement" or "Agreement") attached as **Exhibit A**. The Settlement was reached by experienced counsel during a full-day mediation with mediator Lee Parks. If approved, it will provide individual payments to 109 individuals, which include the Named Plaintiff (the "Plaintiffs").

The settlement documents submitted for approval or entry by the Court consist of the following:

**Exhibit 1:**   Collective Action Settlement Agreement with Exhibits.

**Exhibit 2:**   Proposed Order of Dismissal and Approving Settlement

**Exhibit 3:**   Declaration of Shannon M. Draher

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement.

## **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **The Action and Settlement.**

On March 6, 2019, Named Plaintiff filed this case (the "Lawsuit" or the "Action") against Defendant on behalf of himself and other similarly situated current and former employees. (Draher Decl., ¶ 10; ECF No. 1).

In the Action, Named Plaintiff alleges that Defendant failed to pay him and other similarly situated employees overtime for all hours worked in excess of 40 in a workweek in violation of the Fair Labor Standards Act, § 201 *et seq.* ("FLSA"). Specifically, Named Plaintiff alleges that Defendant violated the FLSA by failing to pay him and other similarly situated employees for the time they spent traveling during their normal workdays to jobs that required an overnight stay. (Draher Decl., ¶ 11; ECF No. 1).

On April 3, 2019, Defendant filed a Motion to Dismiss the Action. (Draher Decl., ¶ 12; ECF No. 6). Named Plaintiff filed an Amended Complaint on April 16, 2019. (Draher Decl., ¶ 13; ECF No. 11). Defendant filed a Motion to Dismiss the Amended Complaint on April 30, 2019. (Draher Decl., ¶ 14; ECF No. 12). On January 1, 2020, the Court denied Defendant's Motion to Dismiss. (Draher Decl., ¶ 15; ECF No. 26).

Following the Court's Order denying Defendant's Motion to Dismiss, the Parties filed a Joint Motion to Certify Collective Class and Approve Collective Action Notice. (Draher Decl., ¶ 16; ECF No. 27). The Court granted that Motion on January 22, 2020. (Draher Decl., ¶ 16; ECF No. 28).

Pursuant to the Court's Order granting conditional certification, a Court-authorized notice was sent to the following collective class of employees:

> All current or former hourly non-exempt employees of Defendant who (1) were required to travel to a remote jobsite away from their home communities and stay overnight; (2) have not been paid for time spent traveling to these remote jobsites;

and (3) as a result of the travel time to the remote jobsite, worked over 40 hours in any workweek beginning January 21, 2017, to the present.

(Draher Decl., ¶ 17). 109 Opt-In Plaintiffs (including Named Plaintiff) joined this case. (Draher Decl., ¶ 18).

After the close of the notice period, the Parties agreed to mediate this case. Defendant produced Plaintiffs' time, pay and travel data to Plaintiffs' Counsel. (Draher Decl., ¶ 19). Plaintiffs' Counsel engaged the service of a Ph.D economist to construct a damages model. The Economist first calculated the distance and time it would take each Plaintiff to travel from their home community to the job location and back. Since Defendant did not have data that showed the time of day each Plaintiff spent traveling to overnight jobs, the Economist applied the following assumptions to each workweek in which a Plaintiff was working on an overnight job:

- For trips that were 1 ¼ hours or less, she credited Plaintiff with zero travel hours. This assumption was made because it was assumed that for these trips, a Plaintiff would travel outside of his/her normal working hours.[1]

- For trips that were between 1 ¼ hours and 2 ½ hours, she credited Plaintiff with 50% of the travel time. This assumption was made because it was assumed that for these trips, a Plaintiff would spend 50% of the trip traveling during his/her normal working hours.

- For trips that were between 2 ½ hours and 4 hours, she credited Plaintiff with 75% of the travel time. This assumption was made because it was assumed that for these trips, a Plaintiff would spend 75% of the trip traveling during his/her normal working hours.

- For trips that were over 4 hours, she credited Plaintiff with 100% of the travel time. This assumption was made because it was assumed that for these trips, a Plaintiff would spend 100% of the trip traveling during his/her normal working hours.

- For trips that were in excess of 6 hours, she assumed that the Plaintiff did not travel back and forth on the weekends and only gave the Plaintiff credit for one round trip.

(Draher Decl., ¶ 20). Using these assumptions, the total unpaid overtime due to Plaintiffs was approximately $160,000.00. (Draher Decl., ¶ 21).

---

[1] Only time spent traveling during Plaintiff's normal working hours (on working and nonworking day) to overnight jobs is compensable under the FLSA. 29 C.F.R. § 785.39.

Defendant disagreed with the assumptions outlined above. Defendant asserted that most Plaintiffs did not travel home from the overnight job each week. Moreover, Defendant continued to assert that travel to and from these jobs was ordinary commuting time that is not compensable. (Draher Decl., ¶ 22).

The Parties mediated this case with Lee Parks on August 24, 2020. The Parties reached a settlement at the mediation. (Draher Decl., ¶ 23).

**B.** **The Settlement Terms.**

If approved by the Court, the Settlement will include all 109 class members who previously opted into this lawsuit. The total gross settlement amount is $200,000, which sum will cover: (a) all of the individual payments to the Plaintiffs; (b) Named Plaintiff's Service Payment; and (c) Plaintiffs' Counsel's attorneys' fees and expenses. In addition to the $200,000 monetary payment, Defendant also agreed to pay the mediator's and settlement administrator's fees and costs. (Draher Decl., ¶ 24).

The net settlement amount – the gross settlement amount minus the Named Plaintiff's Service Payment and Plaintiffs' Counsel's attorneys' fees and expenses – will be divided into individual payments to the Plaintiffs proportionally based on the number of workweeks each Plaintiff was employed by Defendant during the period of January 1, 2017 to August 24, 2020. These individual payments will be allocated as follows: 50% of each individual payment will be for unpaid wages, and 50% of each individual payment will be for statutory penalties. (Draher Decl., ¶ 25).

$5,000 of the gross settlement amount will be paid to Named Plaintiff as a Service Payment, in addition to his individual payment. (Draher Decl., ¶ 26). One-third of the gross settlement amount will be paid to Plaintiffs' Counsel for attorneys' fees. In addition, Plaintiffs' Counsel will be reimbursed for their reasonable litigation expenses. (Draher Decl., ¶¶ 24, 38).

4

In exchange for these payments and other consideration provided for in the Agreement, the Action will be dismissed with prejudice, and Plaintiffs will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses arising prior to the date that the settlement is approved by the Court. (Draher Decl., ¶ 28). A proposed Order of Dismissal and Approving Settlement is attached hereto as **Exhibit 2**.

## THE PROPRIETY OF APPROVAL

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declaration of Shannon M. Draher, and as explained below, Court approval is warranted on all scores.

### A. The Seven-Factor Standard Is Satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

5

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As shown below and in the Declaration of Shannon M. Draher, this standard supports approval of the Settlement.

  1. <u>No Indicia of Fraud or Collusion Exists.</u>

The Parties' Counsel have extensive experience litigating FLSA claims, including claims for unpaid overtime. (Draher Decl., ¶¶ 6-7, 9). The Parties reached an agreement to settle this Action after a full day mediation with an experienced mediation after than a year of litigation. (Draher Decl., ¶ 23). As such, there is no indicia of fraud or collusion.

  2. <u>The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.</u>

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. The Parties continue to disagree over the merits of Plaintiffs' claims. In addition, Plaintiffs and Defendants disagree about the applicability of the three-year statute of limitations and liquidated damages. (Draher Decl., ¶¶ 22, 30).

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Draher Decl., ¶¶ 32-35).

       3.       <u>Investigation Was Sufficient to Allow the Parties to Act Intelligently.</u>

The Parties engaged in substantial investigation, and informal discovery prior to negotiating the Settlement. Defendants produced Plaintiffs' time, pay and travel data for the Plaintiffs for relevant time period. Plaintiffs' Counsel, in conjunction with its Ph.D Economist, used that data to construct a damages model. Using that model, the Parties engaged in substantial negotiations and came to an agreement at the mediation. (Draher Decl., ¶¶ 19-23).

       4.       The Risks of Litigation Favor Approval.

Although the Parties believe in the merits of their positions, they recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Continued litigation would be risky for all. (Draher Decl., ¶¶ 30-35).

       5.       <u>Uncertainty of Recovery Supports Approval.</u>

Plaintiffs' range of possible recovery is also open to dispute. Even if Plaintiffs succeeded on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. Specifically, Defendant claims that most Plaintiffs did not travel home from the overnight job each week – an assumption that was made in Plaintiffs' damages model for trips under 6 hours. Moreover, Defendant maintains that the time spent traveling to these jobs was not compensable. (Draher Decl., ¶¶ 22).

       6.       <u>Experienced Counsels' Views Favor Approval.</u>

The Parties' Counsel are experienced in wage and hour collective and class action cases. At all times, Plaintiffs' Counsel has acted in good faith, and have represented Plaintiffs' best interests in reaching the Settlement. The Parties' Counsel support the Settlement as fair and reasonable, and in the best interest of the Plaintiffs as a whole.

**B.      The Settlement Distributions Are Fair, Reasonable and Adequate.**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for the Plaintiffs.

1.      The Individual Payments Are Reasonable and Adequate.

All individual payments will be calculated proportionally on the number of workweeks each Plaintiff worked for Defendant during the period of January 1, 2017 to August 24, 2020. (Draher Decl., ¶ 25). The total gross settlement amount represents approximately 125% of Plaintiffs' estimated overtime damages according the Plaintiffs' damages model. (Draher Decl., ¶ 25).

2.      Representative Plaintiff's Service Award Is Proper.

The Settlement Agreement provides for a service award of $5,000.00 to Named Plaintiff, in addition to his individual payments. Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *7 (N.D. Ohio Mar. 8, 2010)).

8

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

Plaintiffs' Counsel states that the Named Plaintiff, John Lewis, contributed significant time, effort, and detailed factual information that assisted Plaintiffs' Counsel in negotiating this settlement, and that his time and efforts support the requested service payment. (Draher Decl., ¶ 36).

        3.    <u>The Attorneys' Fees and Expenses to Plaintiffs' Counsel Are Proper and Reasonable.</u>

After the Court has confirmed that the terms of settlement are fair to Plaintiffs, it may review the Parties' Agreement as to the provision of fees and costs to Plaintiffs' Counsel. The Parties agreed at mediation to a total settlement amount. The Settlement reflects Defendant's agreement to pay Plaintiffs' Counsel one-third of the total settlement amount and their reasonable expenses incurred in the Action out of that fund, subject to the Court's approval.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate,*

*Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

Here, Plaintiff is requesting that the Court approve as reasonable attorneys' fees of one-third of the settlement fund. In the Southern District of Ohio, "an award of one-third of the settlement fund as a fee award… is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *13 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221 (N.D. Ohio July 27, 2018)). This is consistent with numerous other wage and hour cases in which a court has approved an award of attorneys' fees of one-third of the settlement amount. *See, e.g., Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, *15 (S.D. Ohio Dec. 3, 2019) (approving an award of 33 1/3% of a settlement fund in a wage and hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 U.S. Dist. LEXIS 181325, *12 (S.D. Ohio Oct. 21, 2019) (same); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, *16 (N.D. Ohio Mar. 26, 2019) (same); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, *21 (S.D. Ohio Aug. 17, 2018) (same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, *6 (N.D. Ohio May 4, 2018) (same); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, *22 (N.D. Ohio June 15, 2010) (same); *see also* Draher Decl., ¶ 37.

The attorneys' fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case without extensive litigation rather than prolonging the litigation and increasing their potential fees. Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Plaintiffs were at a risk

for non-payment. This risk of non-payment strongly supports the amount requested here and warrants approval. (Draher Decl., ¶¶ 19-22).

Further, Plaintiff's Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. (Draher Decl., ¶¶ 37-38). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019).

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *10 (S.D. Ohio Nov. 25, 2019). This case involved contested issues of whether Defendant's employees performed work for which they were not properly compensated and, if so, how much of that time was compensable. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

Named Plaintiff is also requesting that the Court approve the reimbursement of Plaintiffs' Counsel's out-of-pocket expenses of approximately $21,396. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist.

11

LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

Here, all expenses were incurred during the course of the litigation of this Action or will be incurred during the administration of the Settlement. (Draher Decl., ¶ 38). Thus, the Court should award Plaintiff's counsel their expenses, as is customary in this District.

## **CONCLUSION**

The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order of Dismissal and Approving Settlement; (2) approve Plaintiffs' Counsel's request for attorneys' fees and expenses; (3) approve the Named Plaintiff's Service Payment; and (4) retain jurisdiction to enforce the Settlement.

Dated: October 1, 2020

Respectfully submitted,

**NILGES DRAHER LLC**

/s/ *Shannon M. Draher*
Shannon M. Draher (0074304)
Hans A. Nilges (0076017)
7266 Portage Street N.W.
Suite D
Massillon, OH 44646
Telephone: (330) 470-4428
Fax: (330) 754-1430
Email: sdraher@ohlaborlaw.com
hans@ohlaborlaw.com

Jeffrey J. Moyle (0084854)
614 West Superior Ave
Suite 1148
Cleveland, OH 44113
Telephone: (216) 230-2944
Fax: (330) 754-1430
Email: jmoyle@ohlaborlaw.com

*Attorneys for Plaintiffs*

/s/ *Nick A. Nykulak*
Nick A. Nykulak (0075961)
ROSS, BRITTAIN & SCHONBERG CO., L.P.A.
6480 Rockside Woods Blvd South, Suite 350
Cleveland, Ohio 44131
Telephone: (216) 447-1551
Fax: (216) 447-1554
Email: nnykulak@rbslaw.com

Brent Wilson (Georgia Bar No. 767667)
*Admitted Pro Hac Vice*
Douglas H. Duerr (Georgia Bar No. 231772)
*Admitted Pro Hac Vice*
ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30300
Telephone: (404) 659-6700
Fax: (404) 222-9718
Email: bwilson@elarbeethompson.com
duerr@elarbeethompson.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2020, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Shannon M. Draher*
Shannon M. Draher
*Counsel for Plaintiff*
